# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UMANO MEDICAL, INC., | : | |
|     Plaintiff/Counterclaim | : | CIVIL ACTION |
|     Defendant/Third-Party Plaintiff, | : | No. 18-4338 |
| | : | |
|     v. | : | |
| | : | |
| DISORB SYSTEMS, INC., | : | |
|     Defendant/Counterclaim Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| SPAN-AMERICA MEDICAL SYSTEMS, INC., | : | |
|     Third-Party Defendant. | : | |

**McHUGH, J.**                                                                                                                            **May 15, 2020**

## MEMORANDUM

      This is a contract dispute arising out of a venture to supply hospital beds and related medical equipment to the Federal Government. Up to this point, the case has involved only the two original parties to the undertaking. Plaintiff Umano now seeks to join the supplier of the purportedly defective beds that are at the center of the controversy, alleging breach of contract and tortious interference with contract. The proposed third-party defendant has moved to dismiss for failure to state a claim. Much of the basis for dismissal of the breach of contract claim involves issues of fact not properly considered under Federal Rule of Civil Procedure 12. As to that claim therefore the motion will be denied. But the tortious interference claim in Umano's Complaint is fatally deficient and will be dismissed.

I. **Relevant Background**

A. **Factual Background**

Plaintiff Umano Medical ("Umano") is a Canadian company that manufactures medical equipment. DiSorb Systems ("DiSorb") is a Pennsylvania company that distributes medical equipment on behalf of manufacturers. In September 2016, DiSorb entered into an agreement with the Department of Veterans Affairs ("VA") to supply beds and mattresses to the Minneapolis, Minnesota VA Medical Center ("Minneapolis VA"). (Amended Third-Party Complaint ("ATPC") ¶ 15, ECF 41; VA Contract, Ex. G to ATPC, ECF 41-7.)[1] On October 20, 2016, DiSorb then entered into an agreement with Umano (the "Distribution Agreement") under which DiSorb would serve as the exclusive distributor of Umano's products to the Federal Government. (ATPC ¶ 14; Distribution Agreement, Ex. F to ATPC, ECF 41-6.) On October 27, 2016, Umano, in turn, entered into a written Purchase Order with Defendant Span-American Medical Systems ("Span"), a South Carolina company that produces therapeutic mattresses and cushioning products, under which Span would serve as a third-party supplier for the equipment that would be sold to the VA pursuant to the Distribution Agreement. (ATPC ¶ 16; Purchase Order, Ex. H to ATPC, ECF 41-8.) In the Purchase Order with Span, Umano specified only the quantity and model of the products it sought without providing any additional identifying information. (Purchase Order, Ex. H to ATPC, ECF 41-8.)

DiSorb delivered and installed the equipment to the Minneapolis VA in November 2016, December 2016, and January 2017. (ATPC ¶ 17.) In February or March 2017, the Minneapolis VA allegedly notified Span of defects in the mattresses the VA received, but Span did not pass

---

[1] The Court notes, and Umano confirms, that it has supplied only the first page of the VA Contract as an exhibit to the Amended Third-Party Complaint in order comply with the Local Rules regarding the page limitations for exhibits. (Opp. Br., at 4 n.1, ECF 41.) The cover page suffices for the purposes of deciding the Motion to Dismiss.

that information along to Umano. (ATPC ¶¶ 18-19.) Span purportedly also tried, without success, to repair the mattresses. (ATPC ¶ 20.) Because the VA contract was with Disorb, not Span, some ten months after installation of the beds, the Minnesota VA sent a letter to DiSorb, contending that the mattresses were defective. (DiSorb's Counterclaims ¶ 24, Ex. C to ATPC, ECF 41-3.) The Minnesota VA also demanded that DiSorb replace all of the allegedly defective mattresses at its own cost. *Id*. ¶ 25.

Things soured quickly between Umano and DiSorb. Despite the negative turn in their relationship, however, Umano and DiSorb worked together to fulfill a contract with the Alexandria, Louisiana VA Medical Center ("Alexandria VA") for the installation of 80 hospital beds, which Umano provided on April 28, 2018. (ATPC ¶¶ 22-23.) DiSorb refused to pay Umano funds it received from the Alexandria VA, purportedly because it intended to use those funds to replace the mattresses at the facility in Minnesota. (ATPC ¶¶ 24-26; Ex. A to ATPC, at 51, ECF 41-1.) In addition, DiSorb accused Umano of confiscating and reselling the old beds at the Minnesota VA without DiSorb's knowledge or consent. (Ex. C to ATPC ¶¶ 17-21, ECF 41-3.)

Shortly thereafter, Umano and DiSorb traded correspondence regarding each side's position as to the status of the contractual relationship. On May 3, 2018, Umano sent a letter notifying DiSorb of its intent to terminate the Distribution Agreement if DiSorb did not meet its demand for $87,870.08 in outstanding funds within 30 days of the letter. (Ex. A to ATPC, at 67-69, ECF 41-1.) DiSorb responded approximately one week later with a letter in which it contested Umano's entitlement to the funds, noted that it construed Umano's letter as terminating the relationship, and refused to pay DiSorb's demand. (*Id*. at 47-49.) Later the same day, following a second demand from Umano, DiSorb filed suit in the Court of Common Pleas of

Montgomery County and deposited the proceeds from the Alexandria VA in escrow with the court.  (*Id*. at 51.)  Two weeks later, DiSorb reiterated that it construed Umano as having terminated the Distribution Agreement in the May 10, 2018 letter Umano sent to DiSorb just prior to the filing of the Montgomery County lawsuit.  (*Id*. at 72.)

  Finally, on July 27, 2018, Umano dispatched a lengthy missive to DiSorb that challenged the Minnesota VA's contentions about the alleged defects in the mattresses and defended Span's efforts to deal with the situation:

> Based on the information our client, Umano Medical Inc. ("Umano") has been able to obtain from Span-America Innovative Solutions Inc. ("Span") it appears that the problem that was the object of the VA's original complaint back in November 2017 was solved by Span by an upgrade of the pumps in a manner which removes the disconnect process from the pump to the mattress, thereby stopping air from bleeding out of the mattresses.
>
> Since there is nothing that allows Umano to believe that the deflation issue has not been resolved by Span, it is very difficult for Umano to understand the VA's position.  At this point, it can only be surmised that the VA is not acting reasonably and is trying to take advantage of the situation to obtain the replacement of the Span mattresses by other products that the VA prefers or believes are better adapted to the requirements of its patients, and so, for the only reason that the VA incorrectly evaluated from the onset the needs of such patients, prior to making the purchase.
>
> \*\*\*
>
> Considering the for[e]going and the fact that after November 7, 2017, Umano was purposefully kept in the dark and out of the loop by DiSorb with respect to the VA's complaint, it cannot, at this stage, take a position that is other than one that supports Span's contention that the disclosed problem was solved and that the mattresses are not defective.  There is, as a result, no cogent reason for Umano to consent to the VA's request or acquiesce to DiSorb demand that it be indemnified.

(*Id*. at 73-74.)

### B. Procedural History

Umano removed the Montgomery County action to this Court on June 20, 2018. (No. 18-2613, ECF 1.) Shortly after removal, DiSorb voluntarily dismissed the action on June 28, 2018. (No. 18-2613, ECF 5.) In October 2018, Umano filed a two-count complaint against DiSorb in this Court, alleging breach of contract on various theories (ECF 1), which DiSorb moved to dismiss (ECF 18.) Umano amended its complaint before the Court ruled on the motion. (ECF 19.) DiSorb answered Umano's amended complaint and filed counterclaims, alleging breach of contract, strict liability, unjust enrichment, conversion, breach of the covenant of good faith and fair dealing, and tortious interference with the Minnesota VA contract (ECF 21), which Umano moved to dismiss (ECF 23.) DiSorb amended its answer before the court ruled on that motion. (ECF 27.) Umano moved for dismissal of DiSorb's counterclaims (ECF 32), which this Court granted in part, and denied in part (ECF 36.)

On October 21, 2019, almost three years after entering the Purchase Order, Umano filed a two-count Third-Party Complaint against Span, alleging breach of contract and tortious interference with the contract between Umano and DiSorb (ECF 38), which Umano amended on November 13, 2019 (ECF 41.)

## II. Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion[2]

### A. Umano states a claim for breach of contract

In Count I of the Amended Third-Party Complaint, Umano alleges that Span breached the Purchase Order by "fail[ing] to replace and/or adequately repair the defective mattresses and related parts" and by "fail[ing] to replace and/or adequately install replacement parts at its own cost in violation of the contract." (ATPC ¶¶ 33-34; Opp. Br., at 9, ECF 56.) To state a claim for breach of contract under Pennsylvania law, a plaintiff "must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 408 (E.D. Pa. 2016) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

Umano's Complaint recites three provisions of the Purchase Order that Umano contends are applicable to its claim:

> 7. [Umano] reserves the right to cancel this order in its entirety or in part, on account of defects or insufficiency in materials or equipment, workmanship or quality, or if goods, services or equipment ordered are not shipped or executed as specified herein, or are not in accordance with drawings, samples or specifications issued in connection herewith, or if performance on vendor's part is prevented by causes beyond vendor's control, or by government or legal authority, or if the sale or use of goods or equipment purchased in this order are claimed to infringe on any Canadian or foreign patents, copyrights or trademarks, in which event purchaser reserves the right to return for credit at contract sale price, plus expenses, any such goods or equipment which purchaser may have on hand, or if supplier fails to comply with other terms and conditions of this order.

---

[2] After conducting an independent review of the Purchase Order, the Court determined that the agreement contained both a forum selection clause and choice of law provision designating the Canadian Province of Quebec as the controlling jurisdiction. The Court therefore directed the parties to provide supplemental briefing that addressed the effect, if any, either clause might have upon this dispute (ECF 61), which the parties promptly provided (ECF 62 and 63.) In their briefs, the parties advised the Court that neither of them seeks to invoke the clauses contained in the Purchase Order, and as a result, the Court will treat the applicability of these provisions as waived for purposes of this case.

>  \*\*\*
>
>  10. Supplier expressly warrants that all goods delivered in this order will comply with any sample and any specification, drawing or other description provided by the purchaser, and will be fit and sufficient for their intended purpose, and free from defect. Supplier will compensate purchaser, will not hold it responsible at all, and will defend it from all liability for losses, damages to property or injury to persons, in any manner arising out of incident to the performance of the goods ordered. This supplier's responsibility will remain in force even after delivery and acceptance of the goods ordered.
>
>  \*\*\*
>
>  14. Supplier agrees to provide and maintain proper insurance coverage protecting purchaser against any loss of, or damage to material, equipment, etc. belonging to purchaser while in supplier's possession.

(ATPC ¶ 32 (quoting Purchase Order, at 3).)

Span correctly points out that Umano does not plead *which* of the three recited provisions Span allegedly breached. But taking the complaint as a whole, it is clear Umano is alleging that there were defects in the mattresses and that they were not fit for their intended use under Paragraph 10. And although Span vigorously contends that it was not given any specification with which to comply, I read the defect and fitness language in Paragraph 10 as imposing obligations that are independent of compliance with specifications.

Span is correct that Umano's pleading is couched in conditional terms, describing the defects as "alleged" and basing its pleading "upon information and belief" that the VA notified Span about them. (ATPC ¶¶ 18-20.) The Third Circuit has upheld the sufficiency of allegations made upon information and belief, particularly where there is information that lies "peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). Nevertheless, when a court relaxes pleading requirements, it must ensure that "[p]laintiffs . . . accompany their legal theory with factual allegations that make their

theoretically viable claim plausible." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Here, Umano's allegations are not simply speculation: there is evidence of complaints about leaking air from the mattresses as well as evidence that Span independently engaged with the VA and made at least some repairs to the valves. And although Span is again correct that Umano previously denied the existence of any defect in its July 2018 correspondence to DiSorb, a fair reading of Umano's letter makes clear that it qualified the position it was taking. Umano observed that DiSorb had provided no notice of the VA's complaints and, based on the information it had at that time, Umano could not do anything other than support Span's assertion that there was no defect. (ECF 41-1, pp. 73-74.) Finally, although Umano asserts a conditional claim against Span that is arguably inconsistent with other theories it has advanced against DiSorb, Federal Rule of Civil Procedure 8(d)(2) permits a party to raise claims "alternatively or hypothetically," and, under Rule (8)(d)(3), a party may state as many claims as it has "regardless of consistency."

Accordingly, Umano has stated a claim for breach of contract.

### B. Umano fails to state a claim for tortious interference

In Count II of the Amended Third-Party Complaint, Umano alleges that Span interfered in the contractual relationship between Umano and DiSorb. (ATPC ¶¶ 39-44.) Span urges that Umano's tortious interference claim should be dismissed because Umano simply recites the elements of the claim without supplying the necessary factual support for its allegations. (MTD, at 12-13, ECF 50.) I agree.

Before reaching the merits, I first address a threshold matter. Span points out that Umano appears to recite the elements of a tortious interference claim under Pennsylvania law without any choice of law analysis. (*Id*. at 13 n.6.) That has significant implications given that (1) the

matter is before the Court under its diversity jurisdiction and involves a Canadian company and a South Carolina company; (2) the dispute centers on a contract whose obligations were performed in Minnesota; and (3) the contract contains a choice of law provision, specifying that it "will be managed and interpreted in compliance with the laws" of the Province of Quebec. (Purchase Order, at 3.)  In their briefing, the parties declined to invoke the choice of law provision, and I will therefore treat the provision as waived.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316-17 (3d Cir. 2014).  Further, since both parties proceed to analyze this claim under Pennsylvania law, I will apply that standard.  *Id*.

Under Pennsylvania law, a plaintiff sets forth a viable claim for tortious interference by pleading four elements:  "(1) the existence of a contractual [relationship] between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the [contractual relationship]; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987)).

Umano's allegations do not rise above a formulaic recitation of the claim's elements:

> 40. A contractual and economic relationship existed between DiSorb and Umano which resulted in substantial economic benefit to Umano. (Distribution Agreement attached as Exhibit "F").
>
> 41. Without privilege or justification, Span specifically intended to harm the contractual and economic relationship that existed between DiSorb and Umano.
>
> 42. Umano suffered legal damage as a result of Span's conduct.
>
> 43. As a result of Span's conduct, DiSorb cancelled and dissolved the Distribution Agreement between DiSorb and Umano.
>
> 44. As a direct result of Span's tortious interference with Umano's

>   Distribution Agreement with DiSorb, Umano has suffered specific, actual pecuniary loss measured in the value (minus 6%) of any and all contracts fulfilled by DiSorb for the purchase of beds since the date of the dissolution of the Distribution Agreement.

(ATPC ¶¶ 40-44.)

Umano alleges no facts that would support an intent to interfere, and unlike its breach of contract claim, there is nothing in the record that lends credibility to such allegations. To satisfy the specific intent element, Umano must allege facts demonstrating that Span purposefully intended to harm the alleged contractual relationship. *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008). Aside from the complete absence of any such facts, the allegation is illogical. As Span cogently argues, it is difficult to discern what it would have to gain from harming Umano's relationship with DiSorb. One is hard pressed to draw any inference of improper intent from Span's attempts to deal with the VA's complaints, because successful resolution of the VA's dissatisfaction would redound to the benefit of all the parties to the transaction. In the absence of some colorable inference that can be drawn from the pleadings, conclusory assertions of intended harm are not entitled to the presumption of truth and may be disregarded. *See Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 510 (E.D. Pa. 2012); *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 728 (M.D. Pa. 2013). Conceptually, on the record in this case, it is difficult to ascertain how any claim for tortious interference could credibly be stated.

Umano's tortious interference claim will therefore be dismissed.

## IV. Conclusion

For the reasons set forth above, Span's Motion will be **GRANTED** in part and **DENIED** in part.  An appropriate Order follows.

<u>/s/ Gerald Austin McHugh</u>
United States District Judge
